IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Cr. No. 18-CR-2945 WJ |
| | ) |
| JANY LEVEILLE, | ) |
| LUCAS MORTON, | ) |
| HUJRAH WAHHAJ, and | ) |
| SUBHANAH WAHHAJ, | ) |
| | ) |
| Defendants. | ) |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS – NO PREDICATE CRIME FOR CONSPIRACY TO KIDNAP

Defendants Jany Leveille, Lucas Morton, Hujrah Wahhaj, and Subhanah Wahhaj, ask the Court to dismiss with prejudice counts 6 and 7 of the Superseding Indictment (the "indictment"), under Federal Rule of Criminal Procedure 12 on grounds that there is no factual predicate to support a charge under the federal kidnapping statute, 18 U.S.C. § 1201.  *See* Doc. 469.   For the reasons set forth below, the United States opposes this motion and respectfully requests that it be denied.

### I.   FACTUAL BACKGROUND

Count 6 charges the Defendants with a violation of 18 U.S.C. § 1201(c).   Specifically, it alleges that the Defendants "[f]rom at least in or about October 2017, up to and including in or about August 2018, in the District of New Mexico and elsewhere . . . knowingly did conspire, combine, confederate, agree, and act interdependently with each other to unlawfully seize,

confine, inveigle, decoy, kidnap, abduct, carry away, and hold JOHN DOE, a child who had not attained the age of eighteen (18) years, to conceal and hold him, and, in committing or in furtherance of the commission of the offense, did willfully transport JOHN DOE in interstate commerce from the State of Georgia to the State of New Mexico, and did conceal and hold JOHN DOE, resulting in his death."   Superseding Indictment (Doc. 85), at 8.   Count 7 charges the Defendants with a violation of 18 U.S.C. § 1201(a)(1) and (2).   Specifically, it alleges that the Defendants "[f]rom at least in or about October 2017, up to and including in or about August 2018, in the District of New Mexico and elsewhere . . . knowingly did and did attempt to unlawfully seize, confine, inveigle, decoy, kidnap, abduct, carry away, and hold JOHN DOE, a child who had not attained the age of eighteen (18) years, to conceal and hold him, and, in committing or in furtherance of the commission of the offense, did willfully transport JOHN DOE in interstate commerce from the State of Georgia to the State of New Mexico, and did conceal and hold JOHN DOE, resulting in his death."   Superseding Indictment (Doc. 85), at 8-9. Both Count 6 and Count 7 incorporate the factual allegations in paragraphs 2 through 13 of the Superseding Indictment.

JOHN DOE's biological father, Defendant Siraj Ibn Wahhaj, was not charged in either count, as the federal kidnapping statute, by its very terms, excludes parents from prosecution. 18 U.S.C. § 1201(a); *see also United States v. Boettcher*, 780 F.2d 435, 437 n. 3 (4th Cir. 1985) (extending parental immunity under the federal kidnapping statute extends to aiding and abetting by the parent in such kidnapping or in his or her participation in conspiracy to kidnap the child).

At trial, the Government will seek to prove counts 6 and 7 through evidence that shows the following:

(1)      As of December 18, 2017, Siraj Ibn Wahhaj was subject to a court order requiring him to return JOHN DOE to Georgia.   To that extent, his custody of the child outside of Georgia was not lawful as of December 18, 2017, if not sooner.

(2)      Neither Jany Leveille, Lucas Morton, Hujrah Wahhaj, nor Subhanah Wahhaj was JOHN DOE's parent or surrogate parent, and none were excluded from prosecution under 18 U.S.C. § 1201.

(3)      Jany Leveille was, if not a stranger, a transient person in his life who played no role in caregiving or upbringing to JOHN DOE.

(4)      In late November or early December 2017, Jany Leveille formed the belief that she was in fact JOHN DOE's mother.   At this point, she held and concealed JOHN DOE and refused to return him to his true mother.   She continued to claim to be JOHN DOE's mother and continued to hold JOHN DOE until in or about late December 2017, when JOHN DOE died in the course of a religious ritual.   Jany Leveille kidnapped JOHN DOE because she claimed the child to be her own, that she wanted to deprive the child of his necessary prescription medication because it was bad for him, that she wanted to subject the child to religious rituals to cure his medical conditions and handicap, and she believed that JOHN DOE was Jesus Christ and that she was Mary, Mother of God.

(5)      JOHN DOE indicated his desire to go home and did not remain with Jany Leveille voluntarily.

(6)      Jany Leveille convinced Siraj Ibn Wahhaj, Lucas Morton, Hujrah Wahhaj, Subhanah Wahhaj, and others that she was JOHN DOE's mother, that she was Mary, Mother of

God, that JOHN DOE was Jesus Christ, and, after he died in their custody, that he was going to rise from the dead.

(7)     Jany Leveille represented to Siraj Ibn Wahhaj and the other Defendants that she received messages from God, that she was JOHN DOE's mother, that JOHN DOE's real mother practiced black magic, and that JOHN DOE could be cured of his disabilities by taking him from his mother, depriving him of his medication, and subjecting him to religious rituals.   Based on these representations, Siraj Ibn Wahhaj and the other Defendants assisted Jany Leveille in kidnapping JOHN DOE and holding and concealing him from his mother and primary caregiver.

(8)     JOHN DOE's true mother did not permit or consent to Jany Leveille's taking of JOHN DOE.   JOHN DOE's true mother and others repeatedly demanded, personally and through family members, that Jany Leveille and other of the Defendants return JOHN DOE to her.   JOHN DOE's true mother and family members considered JOHN DOE to have been kidnapped.

(9)     Without receiving the voluntary consent of JOHN DOE or JOHN DOE's true mother, Jany Leveille, Lucas Morton, Hujrah Wahhaj, and Subhanah Wahhaj conspired to and, knowing it to be unlawful to do so, did in fact transport JOHN DOE across state lines from Georgia to New Mexico and held and concealed JOHN DOE in New Mexico.

## II.   ARGUMENT

Under Rule 12(b) of the Federal Rules of Criminal Procedure, a party may make a pretrial motion to dismiss an indictment due to its failure to state an offense.   *See* Fed. R. Crim. P. 12(b)(3)(B)(v).   When analyzing an indictment's legal sufficiency, courts generally refrain from looking beyond the four corners of the indictment.   *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994).   However, "'it is permissible and may be desirable where the facts are

essentially undisputed, for the district court to examine the factual predicate for an indictment to determine whether the elements of the criminal charge can be shown sufficiently for a submissible case.'" *Id.* (quoting *United States v. Brown*, 925 F.2d 1301 (10th Cir. 1991)).   The Tenth Circuit has accordingly held that a district court may "dismiss charges at the pretrial stage under the *limited* circumstances where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case." *Id.* at 1088 (emphasis added). "Dismissals under this exception are not made on account of a lack of evidence to support the government's case, but because undisputed evidence shows that, as a matter of law, the Defendant could not have committed the offense for which he was indicted." *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006).

The Federal Kidnapping Act provides that, "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—(1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense . . . shall be punished by imprisonment for any term of years or for life, and, if the death of any person results, shall be punished by death or life imprisonment." 18 U.S.C. § 1201(a).   This statutue "essentially federalizes the common-law crime of kidnapping in certain enumerated situations." *United States v. Toledo*, 985 F.2d 1462, 1465-66 (10th Cir. 1993).   The elements of federal kidnapping are: (1) unlawful seizure, inveigling, kidnapping, etc. of someone; (2) the holding of that person

for ransom, reward, or otherwise; (3) the willful transportation of that person; and (4) an

interstate or foreign nexus.   *See United States v. Walker*, 137 F.3d 1217, 1220 (10th Cir. 1998)

(setting forth the requirements for conviction under § 1201(a)(1), which criminalizes willful

interstate transportation of a kidnapped person).

Here the Defendants assert a number of arguments as grounds for dismissal of the

charges brought against them under 18 U.S.C. § 1201, the federal kidnapping statute.   However,

for the reasons set forth below, these arguments have no merit.   Looking to the four corners of

the pleading, the kidnapping charges against Jany Leveille, Lucas Morton, Hujrah Wahhaj, and

Subhanah Wahhaj are sufficiently alleged.   Moreover, to the extent any of the facts are

undisputed, such facts clearly permit kidnapping charges against Jany Leveille, Lucas Morton,

Hujrah Wahhaj, and Subhanah Wahhaj.

The Defendants first argue that the kidnapping charges should be dismissed because they

could not have conspired with Siraj Ibn Wahhaj in violation of the federal kidnapping statute to

kidnap JOHN DOE, because Siraj Ibn Wahhaj was JOHN DOE's parent and thus is exempt from

prosecution for kidnapping his own child.   Doc. 469 at 4-5.   This argument, however, misreads

the superseding indictment.   The superseding indictment does not charge Siraj Ibn Wahhaj

under the federal kidnapping statute.   It also does not charge the Defendants with conspiring

with Siraj Ibn Wahhaj to kidnap JOHN DOE.   Rather, the superseding indictment charges Lucas

Morton, Hujrah Wahhaj, and Subhanah Wahhaj with conspiring with Jany Leveille and with

each other to kidnap JOHN DOE.

None of the Defendants is a parent of JOHN DOE, and so none are immune from

prosecution by the statute's parental exclusion.   As detailed above, the Government intends to

show at trial that Siraj Ibn Wahhaj was not in lawful custody of JOHN DOE; that Jany Leveille

claimed to be JOHN DOE's real mother and on this basis took unlawful custody of JOHN DOE;

and that Jany Leveille, Lucas Morton, Hujrah Wahhaj, and Subhanah Wahhaj, without receiving

the voluntary consent of JOHN DOE or JOHN DOE's true mother, conspired to and, knowing it

to be unlawful to do so, did in fact transport JOHN DOE across state lines from Georgia to New

Mexico to hold and conceal him there.   These facts, if proved, are sufficient to sustain federal

kidnapping charges against Jany Leveille, Lucas Morton, Hujrah Wahhaj, and Subhanah

Wahhaj.

　　　　The Defendants next argue that there can be no violation of the federal kidnapping statute

because JOHN DOE's father, Siraj Ibn Wahhaj, consented to Defendants' taking of JOHN DOE

and therefore there was no involuntary seizure of JOHN DOE as is required under the statute.

This argument has no merit for at least two reasons.   First and most obviously, even if Siraj Ibn

Wahhaj voluntarily assented to JOHN DOE's seizure, JOHN DOE's mother did not, nor did

JOHN DOE himself, to the extent he was able to.   It is common sense that another person—

whether he has immunity from prosecution or not—cannot "consent" that others commit crimes

and therefore do away with any criminal liability for those who knowingly commit them.

　　　Second, just because the federal kidnapping statute exempts a parent from prosecution under

the statute, it does not negate the criminal nature of the abduction of children and it does not

authorize a parent to allow others to kidnap a child in derogation of the other parent's parental

rights or in derogation of the child's rights.   Such a reading of the statute would be perverse and

monstrous for the reasons made all too clear by this case, and in any event that is not how courts

addressing such a question have read the statute.   *See United States v. Sheek*, 990 F.2d 150 (4th

Cir. 1993), and its unreported companion case, *United States v. Sheek*, 40 F.3d 1245 (4th Cir.

1994) (explaining that, while biological mother who conspired with child's stepfather to kidnap

her children, stepfather could be liable for kidnapping even though mother could not); *Miller v. United Sta*tes, 123 F.2d 715 (8th Cir. 1941), *rev'd on other grounds*, 317 U.S. 192 (1942) (stepfather who conspired with child's mother to kidnap mother's child does not fall within parental exclusion of federal kidnapping statute); *cf. United States v. Boettcher*, 780 F. 2d 435, 437 (4th Cir. 1985) (referencing potential prosecution of two co-conspirators, despite holding the parental exemption under section 1201(a) also applies to a parent who conspires to kidnap their child in violation of section 1201(c)).

Thus, Congress's shielding of parents who kidnap or help kidnap their own children from criminal sanctions in no way morphs into a blanket immunity for any and all others who conspire to, and do, kidnap small children from a non-consenting parent merely by informing or ascertaining the other parent's awareness or encouragement.   Conduct that satisfies all four of the elements of the federal kidnapping statute, such as the Defendants' conduct in this case, still constitutes the federal crime of kidnapping.   *See United States v. Mobley*, 971 F.3d 1187, 1203 (10th Cir. 2020) (stating "the plain language and legislative history of § 1201 shows Congress's intent to exclude *parents* from federal criminal sanctions for kidnapping and for threatening to kidnap their children") (emphasis added); *United States v. Boettcher*, 780 F.2d 435, 437 (4th Cir. 1985) ("Congress never intended to expose *parents* kidnaping their own minor child to criminal sanctions.") (emphasis added).   Without an exemption under the statute or even hinted at by courts, the Defendants' arguments that they did not commit a crime when they conspired to and did seize, confine, abduct, carry away, and hold JOHN DOE must fail.

Finally, the Defendants seek dismissal of the kidnapping charges on grounds that "Ms. Leveille induced her husband, the child's father, to take his own son . . . [which] does not trigger the involuntariness element of the Federal Kidnapping Act."   Doc. 469 at 8.   Again, the

Defendants get the facts all mixed up.   For starters, Ms. Leveille was not Siraj Ibn Wahhaj's wife—she was his girlfriend—and Siraj Ibn Wahhaj was at the time legally married to JOHN DOE's biological mother—the same one who obtained a court order requiring JOHN DOE's return after the abduction.

More importantly, it is not alleged that Ms. Leveille induced Siraj Ibn Wahhaj to take his own son; again, Siraj Ibn Wahhaj is not and cannot be prosecuted under the federal kidnapping statute.   Rather, it is alleged that Jany Leveille conspired with Lucas Morton, Hujrah Wahhaj, and Subhanah Wahhaj to kidnap JOHN DOE and, in fact, did so.   As noted above, Jany Leveille claimed to be JOHN DOE's real mother and on this basis took unlawful custody of JOHN DOE; and Jany Leveille, Lucas Morton, Hujrah Wahhaj, and Subhanah Wahhaj conspired to and, knowing it to be unlawful to do so, did in fact transport JOHN DOE across state lines from Georgia to New Mexico and held and concealed JOHN DOE in New Mexico.   All of the Defendants participated in this, despite knowing JOHN DOE's mother was his primary caregiver, that she and many others were looking for JOHN DOE, and they even helped obstruct those looking for JOHN DOE from finding him.

All of this was done without the consent of JOHN DOE and JOHN DOE's mother.   As the Supreme Court stated in *Chatwin v. United States*, 326 U.S. 455, 464 (1946), "If the victim is of such an age or mental state as to be incapable of having a recognizable will, the confinement then must be against the will of the parents or legal guardian of the victim."   *Id.* at 460; *see also* 9 Wigmore on Evidence (3rd ed.) § 2514; *Commonwealth v. Nickerson*, 87 Mass. 518 (nine-year-old child held incompetent to assent to forcible transfer of custody); *State v. Farrar*, 41 N.H. 53 (four-year-old child held incapable of consenting to forcible seizure and abduction); *In re Lloyd*, 3 Man & Gr. 547 (child between the age of 11 and 12 years held competent to decide

whether to live with father or mother); *United States v. Macklin*, 671 F.2d 60, 64 n. 5 (2d Cir. 1982) ("Reiterating that incapacity or lack of a 'recognizable will' cannot be presumed, but must be proved beyond a reasonable doubt.   Quite obviously, if the victim is an infant, the absence of a 'recognizable will' speaks for itself, and the will or consent of the parent or guardian would control.").   The Government will show at trial that JOHN DOE, notwithstanding his tender years and disabilities, had a recognizable will and made it known that he did not consent to being taken by Jany Leveille.   Yet, even if JOHN DOE had no recognizable will, there can be no doubt that JOHN DOE's mother did not assent to Jany Leveille and the others taking him. *See United States McCabe*, 812 F.2d 1060, 1062 (8th Cir. 1987) (finding two-year-old child incapable of consenting to kidnapping by family acquaintance).

Finally, even if Siraj Ibn Wahhaj legally could consent to the Defendants' kidnapping of his child in a way that could somehow negate the criminal liability of the Defendants, the Government would show that his consent was tainted by Jany Leveille's representation that she was JOHN DOE's biological mother, that JOHN DOE was Jesus Christ, that she was Mary, Mother of God, that JOHN DOE's real mother practiced black magic, and that JOHN DOE could be cured of his disabilities only by taking him from his mother, depriving him of his medication, and subjecting him to religious rituals.   These facts, if proved at trial, are sufficient to sustain a kidnapping conviction against Jany Leveille, Lucas Morton, Hujrah Wahhaj, and Subhanah Wahhaj.

## III. CONCLUSION

Counts 6 and 7 of the Superseding Indictment sufficiently allege offenses under the 18 U.S.C. § 1201.   The Defendants' Motion to Dismiss – No Predicate (Doc. 469) should be denied.

Respectfully submitted,

ALEXANDER M. M. UBALLEZ
United States Attorney

*/s/ Electronically filed*
KIMBERLY A. BRAWLEY and
TAVO HALL
Assistant U.S. Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on the 28th day
of October, 2022 I filed the foregoing
pleading electronically through the
CM/ECF system, which caused counsel
of record for defendant to be served
by electronic means.

*/s/ Filed Electronically*
KIMBERLY A. BRAWLEY
Assistant U.S. Attorney