# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Cause No. 18 CR 2945 WJ** |
| | § | |
| **SIRAJ IBN WAHHAJ, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' REPLY TO GOVERNMENT'S RESPONSE [Doc. 566] TO DEFENDANTS' MOTION FOR SUPPRESSION OF EVIDENCE [Doc. 471]

SIRAJ IBN WAHHAJ, Defendant, by and through his appointed counsel, Thomas Clark and Marc H. Robert, and joined by counsel for all other Defendants, submits the following reply to the Government's response to Defendants' motion for suppression of evidence pursuant to *Franks v. Delaware*, and in support of their position would respectfully show the Court as follows:

On August 2, 2018, Taos County Sheriff Jerry Hogrefe sought a warrant to search the New Mexico home of Mr. Wahhaj and his extended family.  The warrant was supported by an affidavit, under oath, signed by affiant.  The affidavit was replete with significant misstatements of fact and omissions of material facts.  Excised of the misstatements including the material omissions, the warrant application and affidavit failed to establish the probable cause necessary to support the search of Mr. Wahhaj's home. The Court should conduct a hearing on the motion and, following the hearing,

grant the motion and suppress the evidence seized during the search, and all evidence seized pursuant to subsequent warrants based on information obtained during the first, unconstitutional, search.

## Procedural Posture

On October 20, 2022, Mr. Wahhaj filed a motion joined by all Defendants seeking suppression of evidence [Doc. 471]. The Government filed its response on December 30, 2022 [Doc. 566]. Both the motion and the response were accompanied by a number of exhibits. The Court has granted Defendants an extension of time for the filing of this reply to January 23, 2023.

In its response, the Government argues that Defendants have not made a sufficient showing to justify conducting an evidentiary *Franks* hearing; that any false or misleading statements, or material omissions, contained (or not contained) in the search warrant affidavit at issue were not material; and that even after excising any arguably false or misleading statements (or adding material omissions), the warrant contained sufficient information to establish probable cause to execute the warrant. Upon examination of each of the defects of the officer's affidavit, it is clear that the Government's arguments fail.

## Argument

Defendants' motion sets forth in detail the facts on which the motion is based, the documents demonstrating the falsities and omissions in the warrant application and the law supporting the motion. Those matters will not be repeated here except as necessary to refute the Government's claims.

**Defendants have standing to challenge the constitutionality of the search**

The Government claims that the Defendants lack standing to challenge the constitutionality of the search of their home.  The Government is mistaken.

*Rakas v. Illinois*, 439 U.S. 138 (1978), cited by the Government, is inapposite to the matter at hand.  In that case, petitioners challenged the search of a car which did not belong to them, yielding fruits to which the petitioners made no claim.  The Court declined to expand the concept of standing to petitioners' situation.  Here, law enforcement officers invaded Defendants' home, an invasion they challenge here.

Other authority cited by the Government suffers from similar deficiencies. In *United States v. Johnson*, 584 F.3d 995 (10th Cir. 2009), the appellant challenged the search of a storage unit which his girlfriend had rented in the name of yet another person. The search of Defendants' home was of a different character altogether, presenting a different analysis.

In *Amezquita v. Hernandez-Colon*, 518 F2d 8 (1st Cir. 1975), the appellants were squatters on government land.  Local authorities obtained an order of eviction, a significant factor missing in the instant case, and evicted the squatters.  In contrast, the Defendants had built their home, which they occupied for several months, on the Mr. and Mrs. Badger's land, which adjoined land owned by Co-Defendant Morton.  They were engaged in discussions with the Badgers to resolve the situation, possibly with a land swap.  That resolution had not occurred, but neither had any judicial authority issued an order of eviction of Defendants from their home.

In *United States v. Carr*, 939 F.2d 1442 (10th Cir. 1991), the defendant/appellant complained of a search of a hotel room registered to someone else.  Appellant offered no evidence regarding any claim to an expectation of privacy or his possible co-occupancy of the room.  The court understandably rejected the appellant's claim of error by the district court.  That case has no purchase here.

In *United States v. Ruckman*, 806 F.2d 1471 (10th Cir. 1986), the principal character was living in a cave on government with a warrant for his arrest.  When the warrant was served, law enforcement seized a shotgun in the cave-dweller's possession. Authorities returned to the cave, owned by the government, to clear it and found unregistered firearms possession of which was illegal.  As in the *Carr* case, the defendant had made no claim of an expectation of privacy in the government's cave.  Again unsurprisingly, both courts held against the defendant/appellant.

In *United States v. Curlin*, 638 F3d 562 (7th Cir. 2011), an eviction order against the defendant/appellant had been secured from a court when officers were dispatched to serve it and evict the defendant.  The court rightfully found that the defendant had no expectation of privacy in that place.  That order distinguishes that case from the instant one.  *Carlin* fails to support the Government's contention.

In *United States v. Whitehead*, 415 F3d. 583 (6th Cir. 2005), the defendant was arrested in an abandoned house along with a quantity of crack cocaine and a loaded pistol.  The defendant admitted that he had never so much as spent a night in the place. Both courts correctly found that the defendant lacked any expectation of privacy in the

dilapidated house.  Again, *Whitehead* provides no support for the Government's claim here.

*United States v. Gale*, 163 F.3d 192 (D.C. Cir 1998) likewise offers no support for the Government's position.  That defendant's claim of a reasonable expectation of privacy in an abandoned apartment in which he had no right to be was rightly rejected by the courts.

The Government cites *Zimmerman v. Bishop Estate*, 25 F.3d 784 9th Cir. 1994) as directly affecting the instant case.  However, this case too is significantly distinguishable from the instant situation.  Zimmerman, a plaintiff in this civil dispute, was a guest of the Kanes, who were squatters in a shack owned by the defendant Bishop Estate.  The Estate sought the assistance of law enforcement, and after several meetings Zimmerman was eventually arrested for trespass.  The district court rejected Zimmerman's Fourth Amendment claim, holding that he had no expectation of privacy in the shack owned by the Estate.  The Estate was awarded possession of the property by a court.

In contrast, in this case, the Defendants built their home on the property.  The Defendants engaged in discussions with the Badgers about how to resolve the confusion arising due to the error in just where the correct land was located.  The Badgers allowed the Defendants to remain in their home on the property while these discussions were ongoing.  Critically, there was never any order of a court requiring the Defendants to vacate the land.

In *Florida v.* Jardines, 569 U.S. 1 (2013), the Supreme Court reaffirmed the long-standing notion that the home is sacrosanct in considering the reach of the Fourth

Amendment, stating that "when it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed. 2d 734 (1961)."  That the search was executed on what was unquestionably the Defendants' home, the fact that the Defendants had occupied the property at the Badgers' sufferance and the fact that there had been no order of a court ordering Defendants to vacate the property firmly distinguishes this case from those cited by the Government.  The Government's argument must fail.  The Defendants have standing to challenge the search.

**Affiant falsely claimed that he learned of the presence of Mr. Wahhaj's  medically vulnerable child in Mr. Wahhaj's New Mexico home on August 15, 2018.**

This claim is made in the affidavit, which is attached to the original motion as Exhibit A (Bates Number (BN) 23618).  In fact, the affiant knew of the likelihood that the child was with Mr. Wahhaj in New Mexico not later than January 2, 2018, as documented in an e-mail that the Affiant sent to another law enforcement officer on that date.  Motion at 3, Exhibit B (BN 23790).  Affiant's false statement of his recent discovery of this facially emergent situation dishonestly conveyed to the issuing judge that the urgency of the situation required an immediate response.  The potential danger to the child, and the possibility that the situation was potentially life-threatening, was perhaps the most compelling part of the warrant application.  The Affiant's false statement in this regard carries an outsized weight in the assessment of the warrant application as a whole.  The concealment of the timeline of the Affiant's actual discovery

of the child's whereabouts and the concerns for his medical condition was likely the most compelling aspect of the flawed affidavit and the issuing judge's decision.

The concealment of the actual timeline of the Affiant's discovery of the child's location and medical needs further served to cover up the staleness of the information that was likely most important to the issuing judge.  Compelling information learned contemporaneously with the request for the issuance of a warrant would understandably be important in the issuing judge's decision process; the truth that the information was actually **more than seven months old** would have placed the warrant application in an entirely different light.

There can be no question that the Affiant knew that he was misleading Judge Backus.  He had long had information that Mr. Wahhaj and the child AG were in New Mexico and likely in his jurisdiction.  His representation that the information was "hot off the presses" was a knowing fabrication intended to convey an urgency that had existed more than half a year before, but was stale at the time of the application for the warrant.

**<u>Sheriff Hogrefe falsely swore that AG, the child urgently sought, was reported to walk with a limp, dishonestly implying that a child with a limp, observed at Mr. Wahhaj's home, was AG.</u>**

In his affidavit, Hogrefe stated under oath that AG was described as walking with a limp.  Motion Exhibit A, BN 23617.  Hogrefe knew that AG **could not walk at all**.  As noted in the motion, Hogrefe attached two documents to the affidavit submitted to Judge Backus which established that AG could not walk, with or without a limp.  AG's mother, asked to identify the child seen during surveillance walking with a limp, definitively said

that that child was not AG.  Sheriff Hogrefe knew that AG did not walk, and could not have been "described" as having walked with a limp.

Sheriff Hogrefe's false statement disingenuously suggested to Judge Backus that AG had been recently seen strolling around the family property in Taos County, providing the judge with further impetus to issue the warrant for the most compelling reason presented in the warrant application: concern for the life and health of a vulnerable child.  In the absence of the Sheriff's misleading statements, and with the inclusion of the omitted information regarding AG's condition and ability to walk at all, the information about AG was stale, the warrant application lacked probable cause and the warrant would not have issued.  The Defendants' motion for suppression of evidence should be granted following an evidentiary hearing.

### Sheriff Hogrefe's sworn affidavit falsely implied that multiple people had seen individuals "resembling" Mr. Wahhaj at the family property.

In his affidavit, Sheriff Hogrefe averred that "area **residents**" had told law enforcement officers that persons resembling Mr. Wahhaj and his son were seen at a property on Juniper Road in Taos County.  In fact, law enforcement reports indicated no such thing.  They reported that the owner of the land on which Mr. Wahhaj and his extended family made their home told officers that he had seen Mr. Wahhaj and others on the property.  He also told them that he had seen Mr. Wahhaj only once, and that it was a long time before he talked to the law enforcement officers.  Sheriff Hogrefe failed to mention this in his sworn representation to Judge Backus.

The Sheriff's affidavit included information that he, or at least other law enforcement officers, knew to be false and misleading. The implication that there were multiple people who reported having seen Mr. Wahhaj and others undoubtedly had the effect of bolstering the notion that Mr. Wahhaj, and the vulnerable AG, were at the property to be searched. That effect was certainly intended, and likely had an impact on Judge Backus' decision to grant the warrant.

Sheriff Hogrefe compounded the misleading nature of that information by omitting critical information provided by Mr. Badger, the owner of the property on which Wahhaj and the family made their home. Mr. Badger indeed told law enforcement officers that he had seen Mr. Wahhaj, and that he was at the property. He also told officers that he had only seen Mr. Wahhaj once, and that it had been a long time prior to having made that report to officers.

### The Affidavit failed to establish a nexus between Mr. Wahhaj or AG and the property to be searched.

When the false and misleading elements of the affidavit are omitted, and the material omissions added, the affidavit fails to connect Mr. Wahhaj and the child AG to the property sought to be searched. The child with a limp observed through FBI surveillance was not AG, a fact actually known to Sheriff Hogrefe at the time of the submission of the sworn affidavit. "Area residents" (plural) had not told law enforcement officers that they had seen Mr. Wahhaj or AG at the property recently. While Mr. Badger had told officers that he had seen Mr. Wahhaj at the property, it was only once, and that was a long time before making the statement to law enforcement. That stale information

was insufficient to establish the necessary nexus. *United States v. Chambers*, 882 F.3d

1305, 1313 (10th Cir. 2018), *cert. denied, Chambers v. United States*, 138 S. Ct. 2695

(2018); *United States v. Roach*, 582 F.3d 1192 (10th Cir. 2009).

**Sheriff Hogrefe falsely and with reckless disregard for the truth stated that
multiple "adult males" were documented in the FBI's aerial surveillance.**

See Motion, p. 18 for the full discussion of this point.  The surveillance referenced

in the affidavit did not indicate the presence of more than a single male at the property.

The statement in the affidavit that such surveillance showed the presence of multiple

adult males was false and made in reckless disregard for the truth.  As noted in the

Motion, even if the Sheriff  was personally ignorant of what the surveillance showed

(which is unlikely), he cannot insulate himself from the recklessness of the officer who

saw the surveillance and told him about it. *Franks v. Delaware*, 438 U.S. 154 at 163, n. 6

(1978). This false statement would have given Judge Backus the false impression that the

investigative efforts of law enforcement yielded more relevant evidence that they had,

giving more weight to the warrant application and affidavit than was warranted.

**Sheriff Hogrefe falsely and with reckless disregard for the truth averred that
Mr. Wahhaj was a felon when Mr. Wahhaj manifestly was not.**

The affiant alleged in his affidavit that "the totality of what is presented in this

affidavit rises to the need for law enforcement to enter and search the property for… the

wanted felon."  (Exhibit A, BN 23618).  Mr. Wahhaj was not and is not a felon. The

affiant's statement is patently false and was made knowingly and with reckless disregard

for the truth.

The Government makes light of this, implying that what it essentially characterizes as a slip of the verbal tongue mattered not at all in Judge Backus' calculus in authorizing the search.  Nothing could be further from the truth.

By falsely calling Mr. Wahhaj a felon, the sheriff effectively told the judge that Mr. Wahhaj's possession of firearms was a crime, both state and federal.  It was not.  Mr. Wahhaj was legally authorized to possess firearms; he would not have been so authorized if he had a felony conviction in his background.  He did not.

This "slip" could not possibly have escaped Judge Backus' notice.  She would have concluded, based on Sheriff Hogrefe's false statement, that Mr. Wahhaj was a convicted with multiple firearms.  Confronted with that tableau, with its apparent risk of lethal danger, she would have moved with alacrity to forestall that danger.  It wasn't her fault; she wouldn't have known that the sheriff's statement was false.  Whether intentional or reckless, that the impetus provided by that false statement cannot be ignored in this calculation.

**The sheriff falsely averred that "the family" was starving at the time of the submission of the affidavit.**

One member of Mr. Wahhaj's extended family sent a text message asking for money to save herself from starvation.  The sheriff's statement that the "family" was starving would have been understood by Judge Backus to include young children; that would have led her to conclude falsely that children were in a potentially life-threatening situation requiring the immediate intervention of the authorities.  A single e-mail from one person living among Mr. Wahhaj's extended family which requested assistance only

for herself is a far cry from the apparently desperate situation that the sheriff presented to the Judge.

The sheriff's false statement in the affidavit was material and made in reckless disregard for the truth.  Officers were in possession of the actual content of the texts, and were fully aware of their content.  The sheriff's exaggeration of the gravity of the situation can only be seen as another attempt to imbue his affidavit with more drama in an effort to persuade Judge Backus that probable cause existed when it did not.

**<ins>Sheriff Hogrefe intentionally omitted  from his affidavit the fact that AG's mother intended to travel to New Mexico to stimulate law enforcement action.</ins>**

At the time of the submission of the affidavit and warrant application. Sheriff Hogrefe knew that AG's mother, frustrated at what she saw as law enforcement's inaction in the face of her missing and vulnerable child, was traveling to New Mexico in an effort to trigger a greater law enforcement response.  That would have been embarrassing to the sheriff and the other New Mexico law enforcement authorities slowly investigating the matter; his affidavit, otherwise already riddled with material false statements, needed to be sufficient to generate a warrant.  The sheriff omitted to mention this likely impetus for his excesses.  Had the sheriff included this information in his sworn rendition of the situation to the judge, she might have looked at the affidavit with a more jaundiced eye.

**With the excision of stale information, material falsehoods and the addition of material matters omitted, the warrant application failed to establish probable cause to believe that Mr. Wahhaj and his son were on the Property, for a welfare check on the children, or for any other grounds to search the property.**

This aspect of the motion is presented in detail in the Motion at 26-28.  The affidavit likewise fails to establish probable cause to warrant a welfare check on the children thought to have been at the property.  Motion at 28-29.

**The "good faith" exception is unavailable to save the affidavit and application from its material falsehoods, material omissions and failure to present probable cause.**

Because the affidavit lacks a nexus between the criminal activity described and the presence of Mr. Wahhaj or AG within the Subject Property and because the affidavit contains misrepresentations and material omissions, the good faith doctrine of *United States v. Leon*, 468 U.S. 897 (1984), does not save the search. *See United States v. Gonzales*, 399 F.3d 1225, 1229 (10th Cir. 2005). In *Leon*, the Supreme Court stated suppression remains an appropriate remedy when the issuing magistrate wholly abandons his judicial role. 468 U.S. at 898-99. The Court recognized ". . . no reasonably well-trained officer should rely on the warrant" and "nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923, (quoting *Brown v. Illinois*, 422 U.S. 590, 610-611 (1975)).

It also bears noting that the law enforcement officers whom the Government claims to be entitled to the benefit of the good faith exception include among their number the officer, Sheriff Hogrefe, who is responsible for the material misstatements,

material omissions and lack of probable cause which permeate the affidavit. "[E]vidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000); *see also United States v. Ontiveros*, 550 Fed. App'x 624 (2013) (unpublished).

That is plainly the case here. Sheriff Hogrefe and the team of law enforcement officers of which he was a part clearly knew that the things identified in the Motion were false and misleading, or that material information was omitted, in order to disingenuously emphasize the appearance of probable cause.

The affidavit submitted in this case was wholly lacking in indicia of probable cause because it completely failed to establish any criminal activity at the place to be searched. While *Leon* suggests that officers may rely on the magistrate's judgment, at the same time, officers "are also required to exercise their own professional judgment." *United States v. Gonzales,* 399 F.3d 1225, 1230 (10th Cir. 2005). "Indeed, law enforcement officers are presumed to have a reasonable knowledge of the law." *Leon,* 468 U.S. at 919 n. 20. "[A] reasonably well-trained law enforcement officer should be familiar with the fundamental legal principle that both the 'commission' and 'nexus' elements of 'probable cause' include an essential temporal component." *United States v. Zayas-Diaz,* 95 F.3d 105, 114-115 (1st Cir. 1996), (quoting *Leon,* 468 U.S. at 920, n. 20). However, when a warrant contains falsehoods, reliance thereon is not objectively

reasonable and *Leon* requires suppression. *United States v. Stout*, 641 F.Supp. 1074 (N.D.Cal. 1986).

The good faith exception has no application in this case. The good faith doctrine is inapplicable because the search warrant affiant violated the *Franks* doctrine by misrepresenting the facts and omitting material information. These omissions and misrepresentations were necessarily knowing, reckless, and vitiated any probable cause for the warrant to issue.

The previously described misrepresentations, when coupled with the lack of a nexus between the Subject Property and Mr. Wahhaj and AG preclude a finding of probable cause or reasonable reliance on the warrant.  The good faith doctrine cannot apply to salvage the fruits of the warrant from the exclusionary rule.  That is particularly true when the affiant made false statements in reckless disregard of the truth. Furthermore, exclusion is appropriate because reasonably trained officers, exercising their own professional judgment, would be able to recognize the deficiency in the affidavit seeking the warrant and thus, any reliance upon the warrant was not objectively reasonable.

**Defendants are entitled to a *Franks* hearing.**

As set forth in the motion, at 13-14:  To obtain a *Franks* hearing to flesh out the nature and extent of an affidavit's deficiencies, a defendant need only make a substantial preliminary showing that an affidavit (1) contains intentionally or recklessly made false statements or misleading omissions and (2) cannot support a finding of probable cause without the allegedly false or misleading omissions. *Stewart v. Donges*, 915 F.2d 572,

581-82 (10th Cir. 1990); *see also United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). To mandate an evidentiary hearing, a defendant's attack requires more than conclusions and must be accompanied by an offer of proof. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). However, at such a preliminary stage, clear proof of deliberateness or recklessness is unnecessary. *See United States v. Gonzales, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005) (holding that clear proof of deliberate or reckless omissions or misrepresentations is not necessary to mandate a hearing, rather, all that is required is a substantial showing that supports a finding of intent or recklessness).

False statements and material omissions must be made "knowingly and intentionally[] or with reckless disregard for the truth" to warrant a hearing. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). "Reckless disregard for the truth" occurs "when the affiant… entertained serious doubts as to the truth of his allegations..." *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990) (alterations and internal quotation marks omitted). Recklessness may also be inferred from "omissions" that are "'clearly critical'" in determining probable cause. *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990) (quoting *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990)); *accord United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)). Further, a deliberate or reckless omission must be "material" to invalidate a warrant. *United States v. Kennedy*, 131 F.3d 1371, 1377 (10th Cir. 1997).  Similar to the determination of recklessness, an omission is "material" if it helps negate probable cause. *Stewart v. Donges*, 915 F.2d 572, 582 n.13 (10th Cir. 1990).

Defendants adopt and preserve all of the issues raised and arguments made in the Motion, whether or not specifically addressed in this Reply.

WHEREFORE, SIRAJ IBN WAHHAJ, Defendant, joined by Co-Defendants through counsel, respectfully asks the Court to enter an Order suppressing all evidence seized as a result of the execution of the search warrant at Defendants' home, suppressing any evidence seized as a result of information learned during the illegal initial search of Defendants' residence, and providing for such other and further relief to which the Court may find the Defendants to be justly entitled.

Respectfully Submitted,

/s/  *Electronically filed on 1/23/23*
MARC H. ROBERT
P.O. Box 25271
Albuquerque, New Mexico 87102
575.571.7435
m505robert@gmail.com

THOMAS CLARK
432 Galisteo Street
Santa Fe, New Mexico 87501
505.820.1825
Fax: 505.986.0475
tmclark@cjplawsf.com

*Co-Counsel for Mr. Wahhaj*

17