IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**vs.**                                                                                           **No. 1:18-CR-02945-WJ**

**JANY LEVEILLE, et al.,**

       **Defendants.**

## MOTION FOR SEVERANCE OF DEFENDANT

Defendant Subhanah Wahhaj, through counsel, The Law Office of Ryan J. Villa, by Ryan J. Villa, and Justine Fox-Young, PC, by Justine Fox-Young, respectfully moves the Court for an Order severing her case for trial from that of her co-defendants pursuant to *Zafiro v. United States*, 506 U.S. 534 (1993) and Federal Rule of Criminal Procedure 14(a).

### I.   RELEVANT FACTUAL BACKGROUND

Ms. Subhanah Wahhaj was arrested on August 31, 2018 and subsequently charged in a Superseding Indictment with conspiracy to provide material support to terrorists (count 1), providing material support to terrorists (count 2), conspiracy to commit an offense against the United States (count 4), aiding and abetting Jany Leveille's illegal possession of a firearm (count 5), conspiracy to commit kidnapping (count 6), and kidnapping (count 7). *See* [Doc. 85]. The indictment alleges that from October 2017 through August 2018, Subhanah and her four co-defendants were involved in multiple conspiracies, including kidnapping and terroristic activities. *Id*.

The government's theory is that Subhanah participated in the conspiracy and that she and her co-defendants helped to construct and maintain a "training compound" in Amalia, New Mexico, transporting personnel, firearms and ammunition across state lines and storing firearms

and ammunition at the compound, shooting firearms on the compound, and providing financial support to co-conspirators. *See* Doc. 85 at 2-3.

However, it's clear that Subhanah's knowledge of and involvement in the multiple alleged conspiracies is limited. She was not a leader of any of them, but rather followed the lead of her brother Siraj Wahhaj, and his wife, the alleged leader of the group, Jany Leveille. She also followed the lead of her husband, Lucas Morton, who allegedly took on a much more prominent role in the conspiracies. For example, with respect to the kidnapping conspiracy and alleged kidnapping itself, Ms. Wahhaj had no part in the alleged taking of A.G. from his mother Hakima in Georgia, to Alabama. She was not even in Georgia when this occurred. In fact, this was allegedly done by A.G.'s father Siraj, who had the legal right to be with his child and to take him out of state.

She had no role in the provision to him, or alleged lack thereof, of his medications. The government alleges this was done by Leveille and Siraj Wahhaj. *See* United States Response in Opposition to Defendants' Motion to Suppress Evidence Derived as a Result of Search Warrant for Unit 2, Lot 28 in Costilla Meadows, Taos County, NM ("Response") [Doc. 566] at ¶ 7. While she was aware the boy was disabled, she did not attend any of his medical appointments or provide him care, and thus had no knowledge whatsoever of the type of care or medication he may have needed. There is no evidence she had any knowledge of what medication Leveille and Siraj were or were not providing to AG. She also did not participate in any way in any exorcisms that were allegedly performed on AG which the government claims were the cause of, or contributed to, his death. *See* Response, ¶ 7. There is no evidence that she encouraged, assisted or aided allegedly Lucas Morton when he travelled to Georgia with a letter for Muhammed attempting to persuade him to join the group, or about him allegedly lying to the police. Response, ¶ 20. Perhaps most importantly, Subhanah had no knowledge that Siraj told Hakima that John Doe would not be given

medication for religious reasons or that he intended to perform an exorcism on the child. *See* Response, ¶ 28.

With respect to the alleged terrorism charges, there is virtually no evidence of any conspiracy by any co-defendant, but to the extent there is some evidence, it has nothing to do with Subhanah. As far as can be gleaned from discovery, the government bases its frivolous terrorist charges on writings in the diary or a book written by Jany Levielle. There was also a document found allegedly written by Siraj or Lucas called "phases of a terrorist attack." This appears to just be copied from the internet with nothing specific to these defendants or any terrorist organization, terroristic goals, or planned acts of terrorism. Critically, there is no evidence Subhanah even saw these writings, much less subscribed to the views espoused in them. Other than these two writings, the only evidence the government clings to for its terrorism case is the firearms and ammunition, the firearms training that was being conducted, and the location and design of the very rudimentary living quarters that the government sinisterly refers to as a compound. Although all of the conduct related to the firearms, ammunition, and building of the compound was lawful activity, and the firearms and ammunition were not even enough to train a true terrorist group for more than one day, if the government intends to claim these make the defendants terrorists, it will not be able to tie Subhanah to any of it. There is no evidence she procured any of the firearms or ammunition or participated in any of the firearm's training. There is no evidence she participated in constructing their living quarters and there is no evidence she had any knowledge of any plan or agreement to provide material support to terrorism.

## II.   LAW AND ARGUMENT REGARDING SEVERANCE OF DEFENDANTS

### A. Legal Standard

Federal Rule of Criminal Procedure 14 provides for severance where the joinder of defendants in an indictment or consolidation for trial "appears to prejudice a defendant." Although there is a "preference" for joint trials in the interest of efficiency, *Zafiro v. United States*, 506 U.S. 534, 537 (1993), there is a "concomitant concern" that defendants "not be prejudiced simply for the sake of judicial economy." *United States v. Tarango*, 396 F.3d 666, 675 (5th Cir. 2005).

"[I]n a conspiracy trial it is preferred that persons charged together be tried together." *United States v. Scott*, 37 F.3d 1564, 1579 (10th Cir. 1994). "Despite this preference, the district court can sever the trial to avoid prejudice." *United States v. Herrera,* 51 F.4th 1226, 1271 (10th Cir. 2022) (citing Fed. R. Crim. P. 14; *Zafiro*, 506 U.S. at 537–38. "Rule 14 leaves the determination of risk of prejudice and any remedy for such prejudice to the sound discretion of the district court." *United States v. Morales*, 108 F.3d 1213, 1220 (10th Cir. 1997) (citing *Zafiro*, 506 U.S. at 541, 113 S.Ct. 933). The benefits of a joint trial are outweighed, and severance is required, where (1) there's a "serious risk" that a joint trial would "prevent the jury from making a reliable judgment" and (2) "less drastic measures" like limiting instructions cannot "cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.

**B.  The Court should sever Subhanah's case because there is a serious risk that a joint trial will prevent the jury from making a reliable judgment about her guilt**.

"If all the evidence in a joint trial of defendants [i]s admitted against each codefendant, no . . . prejudice could result from the joint trial;" but where "some evidence is admitted against some codefendants that is not admissible against others," that "may create a danger that evidence introduced only against some codefendants will be impermissibly considered against other." *United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir. 1989). The Supreme Court specifically warned in *Zafiro* that a "serious risk" that the jury will be unable to "mak[e] a reliable judgment" can occur "when evidence that the jury should not consider against a defendant and that would not

be admissible if a defendant were tried alone is admitted against a codefendant"—and, in particular, when the jury hears "[e]vidence that is probative of a defendant's guilt but technically admissible only against a codefendant." 506 U.S. at 539.

Here, the risk that the Supreme Court anticipated in *Zafiro* will manifest unless the Court orders a separate trial for Subhanah. *See United States v. Blunt*, 930 F.3d 119, 121 (3d Cir. 2019). The prejudice is readily apparent with regard to several major categories of evidence, which will be admitted at trial against Defendants Leveille, Siraj Wahhaj, and Morton. For instance, during the execution of the search warrant on the defendants' homestead, the government seized evidence, including Jany Leveille's diary and what it will allege is a handwritten document by Lucas Morton or Siraj Wahhaj titled: "Phases of a Terrorist Attack."

The government also alleges that the were contacted by the owner of an Atlanta firearms training company who told them that Siraj and his brother Muhammad were taking too many classes in a short period of time and he thought it was suspicious. This led to the installation of a pole camera at Siraj's home. Though surveillance was done for nearly three years from 2015 through 2017 that revealed zero evidence of terrorist activity, the fact Siraj was being investigated and surveilled because he took too many training courses in firearms is not admissible against Subhanah.

*Alleged kidnapping, exorcisms on A.G. and A.G's death*

The government concedes that it cannot charge Siraj with kidnapping under the federal statute in that he was not charged for such conduct. Yet, at the same time, the government seeks to hold Subhanah liable for aiding and abetting this kidnapping that cannot have occurred. In a joint trial, this puts the onus on Subhanah to lay blame on her co-defendant, Siraj, for lawfully taking his child out of Georgia and failing to care for him, which led to his death. Evidence of

alleged statements made by Siraj to Hakima in Georgia that he would perform exorcisms on A.G. or deny him medication, evidence that Siraj and Jany did deprive him of medication and performed exorcisms, and that this conduct led to A.G.'s death, is not admissible against Subhanah simply because she was present on the family's homestead in August 2018.

*Jany's Diary*

If any portions of Jany's diary are admissible, they would be admissible against her and her alone as a statement of a party opponent. *See* Fed. R. Evid. 801(d)(2)(A). Her diary entries are not co-conspirator statements, which are narrowly defined as those statements "made by the party's coconspirator during and in furtherance of the conspiracy," Fed. R. Evid. 801(d)(2)(E), because they were not made in furtherance of the alleged conspiracy to provide material support and resources to carry out attacks against the United States. Rather, Jany's diary allegedly memorializes her private thoughts, worries, and revelations. For example, it included comments about relatives:

> The reason Allah dislikes Hakima Ramzi, Jamillah Jihad and Halima Jordan is because they denied Allah and they denied me as a Messenger. They prayed salat to show off and did not make salat where they were alone. They only shared their wealth as a means of hurting people, by putting magic in food to turn people away from Islam. They also acquired forbidden wealth from the jinns.

She describes being wary of technology, writing:

> Previously, Allah sent a warning about Google. Googling anything is shirk. Most google answers are designed to stray us from Allah's path. Google belongs to a company managed by people whom shayateens control. As a result, we find different answers sometimes for a single question.
>
> Therefore, I warn you, that seeking an answer from Google is like interrogating Satan, and you will only get scammed in return, and earn Allah's anger.

She recalls encountering Angel Jibril at a Papa John's Pizza, stating that:

> However, the boys could not look into his face. They clarified later on that a very bright light was beaming from his face. He asked them about their schooling.

> Unable to stare in his face, they stated that they were homeschooled. He said he approved homeschooling and he despised being bullied in school. After a while, Ibn Siraj considered his statements to be extremely bizarre. So, he walked out Papa John's Pizza and said, smiling: "Please ask Allah who that man is." When I opened the Qur'an to ask, it was indeed the amazing Angel jibril. Ibn Siraj rushed back inside, but it was too late, he had vanished. Finally catching the meaning of his stories, we laughed, saying: "Of course he has not been to Papa John's, angels don't eat." We laughed more.

And writes about her belief that she is the Virgin Mary, writing:

> Allah is halting the respite and exposing all the plots. He wants to favor us and make us inheritors of the earth. So, He made Isa (Jesus) and I (Mary) leaders, and sent us to establish the truth, and bring to light all the Pharaohs, like Jamillah Jihad, Halima Jordan, Hakima Ramzi, and the shayateens who are willingly, like Shaytan, defying Allah. What they feared, after they worked so hard to plan will successfully get ruined.

These are not co-conspirator statements that would be admissible against Subhanah. "To be in furtherance of the conspiracy, a statement must be more than a merely narrative description by one co-conspirator of the acts of another." *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 88 (2d Cir. 1999) (citations and quotations omitted); *compare with*. *See United States v. Arce*, 997 F.2d 1123 (5th Cir. 1993) (affirming the district court's decision to admit evidence of drug ledger entries as co-conspirator statements made in furtherance of a drug trafficking conspiracy). "The statements must prompt the listener to respond in a way that promotes or facilitates the carrying out of a criminal activity." *SKW Metals & Alloys, Inc.*, 195 F.3d at 88 (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990)). "[T]he statements need not be commands, but are admissible" when "they provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." *Id*.

Jany's private musings are not co-conspirator statements that furthered the alleged conspiracy in any way because such statements did not provide reassurance, induce assistance,

foster trust, or inform other members of the alleged conspiracy about its status. There is no evidence Subhanah read the diary or was influenced by it in any way. And because they are not co-conspirator statements, Jany's diary entries are not admissible against Subhanah. If admitted at a joint trial, the bizarre and inflammatory nature of the entries would prevent the jury from making a reliable judgment about Subhanah's guilt. Instead, the jury would be more likely to be prejudiced against Subhanah and convict her because Ms. Leveille and Siraj Wahhaj are her brother and sister-in-law

*Lucas Morton's "Phases of a Terrorist Attack."*

If any statements from the writings "Phases of a Terrorist Attack," alleged to be Mr. Morton's, are found to be admissible, they would only be admissible against him as the purported author. Like Jany's diary, there is no evidence that the document was shared with Subhanah, much less that its contents prompted her to respond in a way that promoted or facilitated the conspiracy. *See SKW Metals & Alloys, Inc.*, 195 F.3d at 88. Further, "Phases of a Terrorist Attack" appears to be information Mr. Morton collected from the internet and curated into a document rather than written or adopted himself. *See* Fed. R. Evid. 801(d)(2)(B). Accordingly, much of the document may not even be admissible against Mr. Morton.

In any event, the title of the document "Phases of a Terrorist Attack" and its contents risk preventing the jury from reliably rendering a judgment as to Subhanah. For example, "Phases of a Terrorist Attack" contains the following excerpts:

> Chronologically, attacks follow the same basic phases:
> A) Target selection is based on the objective and capabilities of the terrorist group.
> B) Surveillance of the target is necessary to gather all information and intelligence for successful completion of the operation.
> C) Operational planning occurs after information and intelligence are gathered.
> D) Performing rehearsals and dry run.
> E) Attack - executing the plan.
> F) Escape and evade from attack site.

G) Exploiting the act for political purposes.

These statements evoke vivid memories of earlier terrorist attacks, including the attack on the World Trade Center and Pentagon on September 11, 2001, and the Boston Marathon. If Subhanah's case is not severed for trial, "Phases of a Terrorist Attack" will trigger a hostile and unfairly prejudicial response from the jury, which they will almost certainly impute to Subhanah as a result of her marriage to Mr. Morton and because she is his co-defendant. There is no evidence that Mr. Morton's materials promoted or facilitated Subhanah's role in the alleged conspiracy or that they induced her assistance, fostered her trust or cohesiveness, or informed her or the others about the status of the alleged conspiracy. *See SKW Metals & Alloys, Inc.*, 195 F.3d at 88.

*Siraj's Practice at the Shooting Range*

When the family lived in Georgia, Siraj allegedly began attending firearms training in Atlanta. As discussed, the owner of the firearms training facility reported that the frequency of his trainings was suspicious, which led to a three year surveillance operation by the FBI of Siraj in Georgia. Evidence of Siraj's practice at the shooting range would not be admissible at a trial against Subhanah.

Evidence also indicates that Subhanah did not knowingly participate in the conspiracy in any way, and the government's own pleadings demonstrate her limited knowledge of key events in its theory of the case. *See* Response [Doc. 566] at ¶¶ 7, 11, 20. Subhanah's only knowledge of events and perceived involvement was limited to carrying out what she perceived to be her obligations to her husband, Lucas Morton, and family members, including Ms. Leveille. This aspect of her defense is almost certain to be mutually antagonistic and exclusive to the defenses raised by the other defendants, including her husband, Lucas Morton, who is proceeding to trial *pro se*.

In *United States v. Pursley*, the Tenth Circuit provided that "where a defendant seeks severance because of mutually antagonistic defenses as compared to co-defendants, a trial court engages in a three-step inquiry." *United States v. DeLeon*, 323 F.R.D. 672, 686 (D.N.M. 2017), *aff'd sub nom. United States v. Herrera*, 51 F.4th 1226 (10th Cir. 2022)." First, the trial court must determine whether the defenses presented are "so antagonistic that they are mutually exclusive." *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1989). Second, because "[m]utually antagonistic defenses are not prejudicial per se," a defendant must further show "a serious risk that a joint trial would compromise a specific trial right ... or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. [at] 539, 113 S.Ct. 933[ ]. Third, if the first two factors are met, the trial court exercises its discretion and "weigh[s] the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *Peveto*, 881 F.2d at 857. "[D]efenses are mutually antagonistic if the conflict between codefendants' defenses [is] such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Pursley*, 474 F.3d at 765 (quotations omitted).

Because substantial evidence, including evidence in each of the three categories described above, would not be admissible at a separate trial against Subhanah *and* because her defenses are mutually exclusive and antagonistic to the defenses of her co-defendants, the Court should grant her a separate trial.

### C. Severance is appropriate because limiting instructions will not cure the risk of prejudice to Subhanah.

The Supreme Court has observed that limiting instructions are often enough to cure any prejudice resulting from a joint trial. *Zafiro*, 506 U.S. at 539. However, that is not always the case. *See generally Bruton v. United States*, 391 U.S. 123, 135 (1968) ("[T]here are some contexts in

which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."). Limiting instructions often prove to be an insufficient protection in cases where joinder causes the jury to hear *otherwise inadmissible* evidence that is probative of the defendant's *own* guilt. In *United States v. Davidson*, the Sixth Circuit reversed Davidson's drug conspiracy conviction on the ground that his case should have been severed from his co-conspirators. 936 F.2d 856, 860-61 (6th Cir. 1991). Because the cases were joined, the prosecution admitted the co-conspirator's tax returns, which showed "that his income was derived partly from "narcotics." *Id*. at 861. This evidence would not have been admissible in a separate trial of Davidson. *Id*. The Sixth Circuit held that this and other evidence admitted solely against the co-conspirator was so prejudicial to Davidson that separate trials were necessary, notwithstanding "the careful instructions given by the trial judge." *Id*. at 862 (Engel, J., dissenting).

In this case, the admission of hearsay evidence against Jany Leveille and Lucas Morton, which is inadmissible against Subhanah, will interfere with the jury's ability to fairly assess the evidence that is admissible against Subhanah. *See Lawrence v. United States,* 357 F.2d 434, 436-39 (10th Cir. 1966) (cautionary instructions were insufficient where inadmissible evidence "interfere[d] with the jury's impartial consideration of the other evidence properly admitted"). Given the nature of the charges against Subhanah, the Court should take precautions to ensure her right to a fair trial, including granting her a separate trial where the jury will be tasked with evaluating evidence that is admissible only to her rather than her co-defendants.

### III. CONCLUSION

For the reasons discussed above, The Court should enter an Order severing Defendant Subhanah Wahhaj's case for trial from that of her co-defendants. In the event the Court denies this

motion, Subhanah Wahhaj reserves the right to continue to request a separate trial based on the pretrial disclosure of additional evidence as well as the admission of evidence at trial.

Respectfully submitted,

/s/ *Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

*/s/ Justine Fox-Young*
Justine Fox-Young
Justine Fox-Young, PC
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Defendant Subhanah Wahhaj*

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023 a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/*Ryan J. Villa*
RYAN J. VILLA