IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**vs.**                                               **No. 1:18-CR-02945-WJ**

**JANY LEVEILLE, et al.,**

    **Defendants.**

## DEFENDANT SUBHANAH WAHHAJ'S MOTION TO DISMISS BASED ON A VIOLATION OF HER CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL

Defendant Subhanah Wahhaj, through counsel, The Law Office of Ryan J. Villa, by Ryan J. Villa, and Justine Fox-Young, P.C., by Justine Fox-Young, hereby respectfully moves this court to dismiss her case with prejudice based on a violation of her Sixth Amendment right to a speedy trial, and in further support, states as follows:

### BACKGROUND

*The Delayed Federal Prosecution*

Ms. Wahhaj has been in continuous federal custody since September 4, 2018, without the benefit of a trial. Ms. Wahhaj was arrested with four of her family members. *See* Complaint [Doc. 1]. The arrest was based on a criminal complaint. *Id*. Ms. Wahhaj and her family were later indicted on September 11, 2018, but only with two charges of conspiracy and possession of a firearm by an alien. *See* Indictment [Doc. 25]. The government then inexplicably delayed obtaining a superseding indictment for six months. On March 13, 2019, a federal grand jury returned a superseding indictment against all the co-defendants, charging Ms. Wahhaj in Counts 1-2 and 4-7 as follows:

    Count 1: Conspiracy to Provide Material Support to Terrorists;

    Count 2: Providing Material Support to Terrorists;

> Count 4: Conspiracy to Commit an Offense Against the United States;
>
> Count 5: Possessing a Firearm While Unlawfully in the United States;
>
> Count 6: Conspiracy to Commit Kidnapping; and
>
> Count 7: Kidnapping.

*See* Superseding Indictment [Doc. 85]. Following the superseding indictment, Defendants Leveille, Morton, Hujrah Wahhaj, and Subhanah Wahhaj filed motions to determine their competency. The case was declared complex before the superseding indictment on October 3, 2018, *see* Order [Doc. 49], and a trial was scheduled for April 13, 2020. *See* Scheduling Order [Doc. 74]. On April 5, 2019, recognizing that "[a]dditional time [was] needed to complete investigation of this matter, to declassify discoverable materials, and to complete discovery" following the Superseding Indictment, the Court entered an Amended Scheduling Order. *See* First Amended Scheduling Order [Doc. 95]. The trial date remained unaffected.

*The Government's Discovery Delays*

Pursuant to the Amended Scheduling Order, the United States' discovery, including all expert disclosures, was due on July 12, 2019. *Id.* at 2. Even though the government intended to present a superseding indictment at the time of the first indictment nearly a year before, rather than produce discovery at that time, it waited until the last day possible, July 12, 2019. On that date, the government produced approximately **1.27 terabytes of data**. This included **5,172 files** of documents, plus audio and video recordings. The documents totaled **24,064 pages**. On October 3, 2019, three months past the deadline, the government produced an additional **2,237 pages** of discovery. On October 24, 2019, an **additional 128 pages** were produced.

Despite the volume of discovery produced, important discovery was still missing. Notably, the discovery revealed that some of the defendants were under FBI surveillance for nearly three

years, including with the use of aerial and pole camera surveillance. Although the government had this material since at least September 2018, the aerial surveillance was not produced until June 10, 2020. The government also had the pole camera footage, but over a year into the case, had not produced it. Finally, after a request from counsel, the pole camera footage was initially produced on November 16, 2020. However, this was not a complete production, as it did not match the reports of surveillance. The government did not produce the additional footage until October 12, 2022. This production was also incomplete because the files on the hard drives did not work properly. **To date, a complete production has not been made.**

*The Government's Delayed Expert Notices*

On July 9, 2019, the United States filed its Notice of Intention to Offer Expert Testimony. *See* Notice [Doc. 127]. This Notice identified five experts the government intends to call. *See Id.*, ¶¶ 1-5. The Notice states the government will provide to the defense the qualifications of the experts, their opinions, and bases for the opinions "once the experts have had an opportunity to review completed discovery and have rendered their opinions in writing." *Id.* ¶ 6. Nearly two months after this Notice was filed, the government still had not produced this information. Accordingly, the defense inquired about this, and on August 30, 2019, the United States informed that it would be disclosing full expert reports within the next 3-4 weeks, along with the materials the experts relied upon. Based upon this, Defendants sought and received from the Court a 60-day extension of various deadlines, including Defendants' expert and discovery disclosure deadlines, and the deadline to file *Daubert* Motions. *See* Order [Doc. 147].

On September 12, 2019, having still not produced the expert reports and other information that was due with the Expert Notice on July 12, the government indicated that it would produce Dr. John P. Phillip's expert report on September 13, 2019, with the production of Mr. Randy Watt's

expert report to occur the following week. Dr. Phillip's report, however, was not disclosed until October 3. Mr. Watt's CV was disclosed on October 3. In addition, reports had not been produced for the first witness listed on the Expert Notice, ATF Agent James Barlow by the July 12 deadline. His reports were not produced until October 24, 2019. The third expert witness identified is Gloria Smirkle, a nurse practitioner. While the Expert Notice indicates she will testify about the medical treatment she provided to the alleged victim (A.G.), including his medical treatment, diagnosis, and the risks of A.G. not receiving his medication, the government did not produce a report or any treatment records at that time.

Citing the government's dilatory discovery practices and expert disclosures as well as Ms. Leveille's incompetency, Defendants had no choice but to move to continue the April 2020 trial date for six months. *See* Motion to Continue, at 5 [Doc. 167]. Subsequently, the parties agreed to extend the trial date to October 19, 2020. *See* Second Stipulated Scheduling Order, at 1 [Doc. 172]. This is the only time Defendants requested a continuance of trial in this case.

*Competency Raised Over Ms. Wahhaj's Objections*

Against Ms. Wahhaj's expressed wishes, her counsel filed a motion to determine competency on January 13, 2020. *See* Motion [Doc. 174]. Ms. Wahhaj did not consent to her counsel raising competency on her behalf, which in turn resulted in a further delay of her trial. *See* Subhanah Wahhaj's Second Notice of Assertion of Speedy Trial Rights [Doc. 446]. The motion to determine competency resulted in the Court granting Defendants' motions to stay proceedings on February 18, 2020, pending resolution of the competency issues. *See* Order [Doc. 192]. The Court found Ms. Wahhaj competent to stand trial on May 26, 2021. *See* Order [Doc. 309]. Since all competency issues were raised, all Defendants have been found competent to stand trial, and

the stay that was previously imposed by this Court was lifted on October 14, 2022. *See* Order [Doc. 464].

*Ms. Wahhaj's Repeated Assertion of Right to a Speedy Trial*

Ms. Wahhaj has filed three notices asserting her right to a speedy trial, the first being filed on April 6, 2022. *See* Notice [Doc. 404]. The trial was set for September 25, 2023. *See* Scheduling Order [Doc. 529]. However, given the amount of time that has transpired since her indictment, Ms. Wahhaj objected to this trial date in her third notice and requested a trial date in the late Spring of 2023. [Doc. 484]. Since her arrest in September 2018, Ms. Wahhaj has been incarcerated for a current total of **1,613 days or 4 years, 4 months, and 30 days**. During this time, she has been unnecessarily subjected to oppressive and prolonged pretrial confinement, and her Sixth Amendment right to a speedy trial has been violated.

## ARGUMENT

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy … trial." U.S. Const. amend. VI. The remedy for a speedy trial violation is the dismissal of the case. *United States v. Margheim*, 770 F.3d 1312, 1325 (10th Cir. 2014). In *Barker v. Wingo*, the Supreme Court identified four factors that courts must assess in determining whether the right to a speedy trial has been violated. 407 U.S. 514 (1972). These factors are (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of her right, and (4) prejudice to the defendant. *Id.* at 530. "No one factor is necessary or sufficient to conclude a violation has occurred." *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009). Instead, the court must consider each of the factors together "along with other relevant circumstances." *Id.*

a. **Length of Delay**

The first factor of the *Barker* balancing test is the length of delay. 407 U.S. at 530. "The length of delay is a threshold factor." *United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995) (citing *United States v. Dirden*, 38 F.3d 1131, 1137 (10th Cir. 1994)). The delay must be "presumptively prejudicial" in order to move on in analyzing the remaining *Barker* factors. *Id.* If the delay exceeds one year, the prejudice is presumed, and the threshold is met. *United States v. Nixon*, 919 F.3d 1265, 1269 (10th Cir. 2019).

In the present case, the delay is "presumptively prejudicial" because it has far exceeded one year. "The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first." *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004). Ms. Wahhaj was arrested by federal authorities in this case on September 4, 2018, nearly four and a half years ago. Three and a half years ago, prejudice was presumed – now it is certain.

Following the threshold inquiry, courts conduct a second analysis to determine "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett v. United States*, 505 U.S. 647, at 652 (1992). How much weight to assign the delay depends on the "length of time" balanced with the "complexity of the federal case." *Nixon*, 919 F.3d at 1270. The "inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31. However, the presumption of prejudice intensifies over time. *Doggett*, 505 U.S. at 652. This Court designated the case complex for purposes of the Speedy Trial Act. *See* Order [Doc. 49]. Ms. Wahhaj acknowledges this and the complexity that is inherent in a case of this nature. While this Court most recently found that, although a forty-one-month delay "weighs ever so slightly in defendant's favor," "[this] delay for a conspiracy case of this complexity is not unreasonable." *See* MOO [Doc. 388]. Ms. Wahhaj has now been in custody for

approximately fifty-three months. By the time of trial, she will have been in custody for sixty months. This is a full nineteen months after the forty-one-month time period this Court previously examined. Notably, this trial would take place twenty-eight months after she was found competent to stand trial. Sixty months of pre-trial incarceration for Ms. Wahhaj, in this case, is outrageous and unreasonable. The first factor, therefore, weighs heavily in favor of Ms. Wahhaj. *See Barker,* 407 U.S. at 533 (finding a five-year delay extraordinary); *see also United States v. Muhtorov*, 20 F.4th 558, 658 (10th Cir. 2021) (stating six-and-a-half year delay "is highly unusual and should not be tolerated without good reason").

    b. **Reason for Delay**

The second *Barker* factor is the reason for delay. 407 U.S. at 530. To analyze this factor, "the court must assess the reasons offered by the government for not bringing the defendant to trial in a timely fashion." *United States v. Margheim*, 770 F.3d 1312, 1326 (2014). In conducting its analysis, the Court must assess the "degree to which the government caused the delay." *United States v. Batie*, 433 F.3d 1287, at 1291 (10th Cir. 2006). The government's motive for causing the delay is especially relevant to this factor. *Id.* A delay that was deliberately caused in an attempt to gain a strategic advantage weighs heavily against the government. *Id.* On the other hand, delays due to negligence or crowded court dockets weigh less heavily against the government. *Id.*; *see also United States v. Seltzer*, 595 F.3d 1170, 1178–79 (10th Cir. 2010).

However, it is ultimately "incumbent upon the government to present acceptable reasons for the delay." *Margheim*, 770 F.3d at 1326. The government has failed to provide a sufficient explanation as to why Ms. Wahhaj has been held for over four years without an appropriate trial date. She was found competent to stand trial over twenty months ago*, see* Order [Doc. 309], meaning that, although for a period of time, the Court may find that there was "a more neutral

reason" for the delay, the government simply cannot justify the delay well beyond the conclusion of the competency proceedings. *See Margheim*, 770 F.3d at 1326.

Here, the reason for the delay weighs against the government, the Court, and defense counsel - but not against Ms. Wahhaj. The delay from Ms. Wahhaj's arrest on September 4, 2018, through the issuance of the stay on February 18, 2020, is entirely the fault of the government. The government first delayed in obtaining the superseding indictment for six months, from September 2018 to March 2019. The government then delayed in producing discovery a full eleven months after the arrest. Critically, the government produced a massive amount of discovery but failed to produce important surveillance videos. The government also failed to timely produce expert information. This resulted in moving the trial date from April 2020 to October 2020.

The delay from the stay in February 2020 through the finding of Ms. Wahhaj's competency in May of 2021 is partially due to the pandemic, defense counsel seeking a second evaluation of Ms. Wahhaj, to which she objected,[1] and the Court, in issuing its ruling. None of this delay is Ms. Wahhaj's fault. While it is true that after Ms. Wahhaj was sent to the Bureau of Prisons in February 10, 2020, when the Court issued its Order [Doc. 187] for a psychological evaluation, the pandemic struck, and the BOP timely produced a report on April 21, 2020, finding her competent to stand trial. *See* Report [Doc. 210]. Then, at the request of defense counsel, a second evaluation was ordered on June 22, 2020, without objection from the government. *See* Order [Doc. 228]. Nearly seven months went by before, on January 5, 2021, the Court determined that a second evaluation was not necessary. *See* MOO [Doc. 281]. Another five months passed before the Court held Ms. Wahhaj's competency hearing on May 6, 2021. The Court then issued its opinion finding her competent on May 26, 2021. *See* MOO [Doc. 309]. Here, because defense counsel raised

---

[1] *See* Sealed Order [Doc. 274] noting Ms. Wahhaj's objection to the second competency evaluation; Ms. Wahhaj's objection to second evaluation [Doc. 282].

competency against Ms. Wahhaj's wishes and sought a second evaluation over her objection, these actions by defense counsel should be counted against the government. *United States v. Tigano*, 880 F.3d 602, 616 (2d Cir. 2018) (holding delay caused by a defense attorney counts against the government when the record reveals the attorney was acting against the expressed wishes of the defendant). The remainder of the delay from February 2020 to May 2021 must be attributed to the Court.

Notably, Ms. Wahhaj did not agree to undergo a first or second competency evaluation, and she was ultimately found competent. Yet, even if this delay could be blamed on her, the trial of this cause is not commencing until over two years since she was found competent. Additionally, although the pandemic halted most proceedings worldwide at its inception, this Court has allowed trials for the last two years, since February 28, 2021, before Ms. Wahhaj was found competent. *See* U.S. Response to Siraj Wahhaj Motion to Dismiss, at 5 [Doc. 353] (citing D.N.M. administrative orders). And after the competency finding, when trials had resumed, Ms. Wahhaj forcefully asserted her right and requested a trial. Concerns about the ongoing pandemic simply cannot justify the nearly five-year period of pretrial incarceration, and the burden is not on Ms. Wahhaj, but rather on the prosecution and the Court, to ensure that Ms. Wahhaj is timely tried. *See United States v. Seltzer*, 595 F.3d 1170, 1175-76 (10th Cir. 2010) ("[I]t is the prosecution's burden (and ultimately the court's) and not the defendant's responsibility to assure that cases are brought to trial in a timely manner."). As a result, this factor clearly weighs strongly in Ms. Wahhaj's favor.

    c. **Assertion of Right**

The third *Barker* factor asks whether the defendant asserted her right to a speedy trial. 407 U.S. at 529. The Tenth Circuit has placed strong weight on this factor. *Id.* at 1328. "The defendant's assertion of [her] speedy trial right . . . is entitled to strong evidentiary weight in

determining whether the defendant is being deprived of the right." *Id.* at 531-32. In determining whether an accused asserted the right to a speedy trial, "[t]he question . . . is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch." *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006). Courts are to weigh the "frequency" and "force" of the assertions in determining how much weight to give to such assertions. *Barker*, 407 U.S. at 529.

Ms. Wahhaj has asserted her Sixth Amendment right to a speedy trial three times over the past ten months. *See* [Docs. 404, 446, and 474]. Ms. Wahhaj and her co-Defendants, alongside whom she will be tried absent severance, have asserted their Sixth Amendment right to a speedy trial a total of eight times. [Doc. 481]. Each co-defendant, in this case, has asserted their Sixth Amendment right to a speedy trial. *See* [Docs. 407, 473, and 488]. Ms. Wahhaj never objected to those assertions or indicated she did not agree with these assertions. Instead, she also asserted her right. Since she is being tried alongside each of these Defendants, these assertions apply to her as well. Although Ms. Wahhaj acknowledges that the complexity and the nature of the case initially required that the Court delay the proceedings for a period of time, that period was the original trial date before competency was raised, Ms. Wahhaj, alongside her co-defendants, have been adamantly, frequently, and forcefully putting both the government and this court on notice of their "desire to go to trial with dispatch." *Batie*, 433 F.3d 1287.

### d. Prejudice

The fourth *Barker* factor is prejudice. 407 U.S. at 529. In the speedy trial context, courts must assess this factor "in light of the interests that the speedy trial right was designed to protect." *Seltzer*, 595 F.3d at 1179. The Supreme Court has identified three main interests: (1) "to prevent oppressive pretrial incarceration[,]" (2) "to minimize anxiety and concern of the accused[,]" and

(3) "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 530. "Because the seriousness of a post-accusation delay worsens when the wait is accompanied by pretrial incarceration, oppressive pretrial incarceration is the second most important factor." *Seltzer*, 595 F.3d 1170, 1180 (10th Cir. 2010). While impairing the defense is the most serious, all factors must be considered together. *Barker*, 407 U.S. at 530.

The nearly five-year delay has led to extreme and "oppressive pretrial incarceration" for Ms. Wahhaj, a central focus of the courts' analysis of the speedy trial right. *Jackson*, 390 F.3d at 1264. The Supreme Court has characterized the five-year delay that Ms. Wahhaj will have experienced by the time of trial as "extraordinary." *Barker,* 407 U.S. at 533.  Risks to Ms. Wahhaj's health due to COVID risks and the delay in her case, have contributed to this "oppressive pretrial incarceration." Ms. Wahhaj contracted COVID while incarcerated and became extremely ill. At least two of her co-defendants have also contracted COVID-19. Past and prolonged exposure to COVID puts Ms. Wahhaj and her co-defendants at risk of a variety of resulting complications. Even mild cases of COVID have been shown to result in memory loss and brain fog,[2] and there are indicators that individuals in custody tend to suffer more severe cases. Notably, the COVID death rate in prisons is far higher than that of the general population. As of spring 2021, the rate was calculated to be 200 deaths per 100,000 incarcerated people (versus the rate in the general United States population of 81 deaths per 100,000 residents).[3]

---

[2] Fong, Tamara M.D. (2022). Brain fog: Memory and attention after COVID-19. Retrieved on January, 28, 2023 from: https://www.health.harvard.edu/blog/brain-fog-memory-and-attention-after-covid-19-202203172707

[3] *See* Marquez N, Ward JA, Parish K, Saloner B, Dolovich S., "COVID-19 Incidence and Mortality in Federal and State Prisons Compared With the US Population, April 5, 2020, to April 3, 2021." *JAMA*. 2021;326(18):1865–1867. doi:10.1001/jama.2021.17575 (adjusted to account for differences in age and sex between the prison population and the general U.S. population)

This unreasonably long and excruciating period of incarceration has exacerbated Ms. Wahhaj's "anxiety and concerns," which are the two other of three main concerns the speedy trial right was designed to protect. *Jackson v. Ray*, 390 F.3d 1254, 1264 (10th Cir. 2004); *see, e.g. Barker v. Wingo*, 407 U.S. at 534 (holding that the defendant must be "prejudiced to some extent by living for over four years under a cloud of suspicion and anxiety" even if the defendant only spent 10 of the months in jail). Ms. Wahhaj has been prohibited from contacting her husband for over four years, which obviously results in heightened levels of anxiety and concern. Notably, excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. *See Doggett v. United States*, 505 U.S. 647, 655 (1992). Accordingly, Ms. Wahhaj has suffered prejudice from such a long period of confinement, and this factor weighs in favor of Ms. Wahhaj.

## CONCLUSION

Based on the foregoing analysis, the five-year period of pretrial incarceration in this case unquestionably violates Ms. Wahhaj's right to a speedy trial under the Sixth Amendment. The remedy for a speedy trial violation is the dismissal of the case. *Margheim*, 770 F.3d at 1325. Sixth Amendment protections to the right to speedy trial exist to ensure that individuals do not spend years wasting away in jail, given the "detrimental impact" incarceration has on individuals. *Barker*, 407 U.S. at 532. This purpose has been severely frustrated in Ms. Wahhaj's case, and as such, dismissal is the only proper remedy.

Respectfully submitted,

/s/ *Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

*/s/ Justine Fox-Young*
Justine Fox-Young, P.C.
5501 Eagle Rock Ave NE Ste. C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/*Ryan J. Villa*
RYAN J. VILLA