IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                       No. 1:18-CR-02945-WJ

JANY LEVEILLE, et al.,

    Defendants.

## **UNOPPOSED MOTION FOR RULE 17(c) SUBPOENA *DUCES TECUM***

Defendant, Subhanah Wahhaj, through counsel of record, Ryan J. Villa and Justine Fox-Young, files this Motion for Rule 17 subpoena *duces tecum* to obtain from New Mexico State Police ("NMSP") any and all reports, dashcam and lapel cam footage of Officer Donis from his encounter with Tanya Badger and his encounter with Lucas Morton on June 30, 2018 in reference to the United States' recently disclosed discovery, Bates Numbers 27098-27099. *See* Doc. 738. Counsel for Ms. Wahhaj contacted counsel for the government, Assistant United States Attorney Kimbery Brawley, who does not oppose this request.

Ms. Wahhaj's requests for these records bears on her right to compulsory process and to an unimpeded pretrial investigation pursuant to the Sixth Amendment to the United States Constitution. This information is necessary both to support the issue of whether defendants have standing to contest the search of their home in Amalia and to prepare their defense for trial.

### **RELEVANT FACTS AND SUMMARY OF ARGUMENT**

Ms. Wahhaj is charged in a seven-count superseding indictment with (Count 1) Conspiracy to Provide Material Support to Terrorists, in violation of 18 U.S.C. § 2339A, (Count 2) Providing Material Support to Terrorists, in violation of 18 U.S.C. §§ 2339A & 2, (Count 3) Conspiracy to Murder an Officer or Employee of the United States, in violation 18 U.S.C. § 1117, (Count 4)

Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. § 371, (Count 6) Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 1201(c), and (Count 7) Kidnapping, in violation of 18 U.S.C. §§ 1201(a) & 2. *See* Superseding Indictment [Doc. 85].

On May 2, 2023, the Government submitted a letter to the Court enclosing a July 6, 2018 FBI 302 form which had not previously been produced to the defense despite the fact that the form was generated nearly five years ago and clearly constitutes Rule 16 material. Doc 738. The form indicates that Agent Brian Cox received a call from New Mexico State Police Officer Bryan Donis who apparently described to Agent Cox an encounter he had had with Defendant Morton at the entrance to Defendants' driveway in Amalia. Doc 738-1. The 302, which is replete with redactions, relates that Tanya Badger contacted Officer Donis and asked him to have Defendants served with a trespass notice. Id. The 302 reports that "Morton walked to the road to speak with Donis" and that "Morton advised there was a court hearing on Wednesday (June 27, 2018) and the judge dismissed the [eviction] case." *Id.* The 302 also states that Morton accessed the eviction case docket on his phone and showed Donis that the matter had been dismissed. Officer Donis apparently declined to serve Morton with a trespass notice. Months later, after the Government had conducted its August raid and arrested Defendants, Officer Donis' lapel camera and dash camera footage surfaced in response to a media request, revealing that Donis had told Tanya Badger a number of things, including that State Police had received calls about a missing boy being on the Amalia property beginning in January but hadn't been able to act because it had its hands tied by the FBI.

This information is relevant to the issue of whether defendants had standing to contest the search of their home in Amalia. *See* Response to Notice [Doc. 740]. It is also relevant to defendants' defenses at trial. Indeed, if a state police officer was on the property in Amalia where

2

defendants were allegedly planning terrorist attacks on federal employees and agents, his observations at that time are pertinent to the terrorism charges.

The defense has requested that the Government provide any reports authored by Donis as well as his dashcam and lapel camera footage, but the Government has declined saying that the materials are not in the custody or control of the FBI and that it will not obtain and produce them. The Government however does not oppose this Motion seeking a subpoena to obtain these records.

## THE LAW REGARDING RULE 17(c) SUBPOENAS

The Fifth and Sixth Amendments to the United States Constitution guarantee a fundamentally fair trial and the right to present a defense, to compel the attendance of witnesses, and to the examination of those witnesses. *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982); *Washington v. Texas*, 388 U.S. 14 (1967), *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *United States v. Robinson*, 583 F.3d 1265 (10th Cir. 2009). Federal Rule of Criminal Procedure 17(c) authorizes a district court to issue a subpoena *duces tecum* ordering the production of any books, papers, documents, data, or other objects that the subpoena designates.

The Court may order production prior to trial and allow inspection of the records, and in considering whether to order production, the Court must consider that "[t]he need to develop all relevant facts in the adversary system is both fundamental and comprehensive." *United States v. Nixon,* 418 U.S. 683, 709 (1974). The Supreme Court has instructed "[t]hat the ends of justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts within the framework of the rules of evidence. To ensure justice is done, it is imperative to the function of the courts that compulsory process be available for the production of evidence needed either by the prosecution or the defense." *Id.*

Further, the Supreme Court held that "[t]he right to the production of all evidence at a criminal trial … has constitutional dimensions" and that "the allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of the law and gravely impair the basic function of the courts." *Id.* at 711-12. "Rule 17(c) permits a defendant to subpoena materials that may be used to impeach a witness for the prosecution." *United States v. James*, 2007 WL 914242, at *29 (E.D.N.Y. Mar. 21, 2007) (not reported in Fed. Supp.) (granting the defendant's requests for visitor, disciplinary, and mental health records under *Nixon* where the defendant argued the records were necessary to impeach a jailhouse informant, who was a key witness against him) (citing *United States v. Cuthbertson*, 630 F.2d 139, 144 (3rd Cir.1980)); s*ee also United States v. Liddy*, 354 F.Supp. 208, 210, 212 (D.D.C.1972) (denying a motion to quash Rule 17(c) subpoena for statements in "all documents, notes, tape recordings and writings" in the witness' possession that "may be admissible as impeachment evidence").

Rule 17(c) governs the issuance of subpoenas for records and enables either party to obtain documents or other physical evidence. Specifically, Rule 17(c)(1) provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered inevidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). Under Rule 17(c)(2), a court may quash or modify a subpoena for records upon a motion to do so if "compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). And under Rule 17(c)(3), "[a]fter a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are

4

exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object." Fed. R. Crim. P. 17(c)(3).

Unlike a trial subpoena issued under Rule 17(a) or 17(b), Rule 17(c) provides that a subpoena for records may be made returnable *before* trial or some other evidentiary hearing. *See* Fed. R. Crim. P. 17(c)(1). As noted above, the second sentence of the Rule provides that the court "may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c); *see also United States v. Nixon*, 418 U.S. 683, 698–99 (1974) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951) ("[Rule 17(c)'s] chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials.")).

Rule 17(d) governs the service of a Rule 17 subpoena. It provides that "[a] marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena." Fed. R. Crim. P. 17(d). The Rule continues that "[t]he server must deliver a copy of the subpoena to the witness and must tender the witness one day's witness-attendance fee and the legal mileage allowance." *Id.* The evidentiary reach of Rule 17(c) is broad. The Supreme Court has held that even materials, which the government is not required to disclose under Rule 16, may be reached under Rule 17(c) "as long as they are evidentiary." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 219 (1951). In *Bowman*, the Court explained:

> [Rule 17(c)'s] chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials... The plain words of the Rule are not to be ignored. They must be given their ordinary meaning to carry out the purpose of establishing a more liberal policy for the production, inspection and use of materials at the trial. There was no intention to exclude from the reach of process of the defendant any material that had been used before the grand jury or could be used at the trial.

*Id.* at 221. "[A]n appellate court will not ordinarily disturb a finding that the applicant for a subpoena complied with Rule 17(c)." *Nixon*, 418 U.S. at 702.

The Supreme Court has held that to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial with the exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." *Nixon*, 418 U.S. at 699

The Tenth Circuit has further explained that "in order to meet this burden, [an applicant] "must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (internal quotation marks, citation, and alteration omitted). The applicant bears the burden of demonstrating a "sufficient likelihood" that the documents sought are material to any issue in the case. *Nixon*, 418 U.S. at 700. Courts have issued subpoenas in response to Rule 17(c) motions, particularly where defendants demonstrate that "other valid potential evidentiary uses" exist apart from impeachment. *Nixon*, 418 U.S. at 699–702.

### ARGUMENT

In this case, Ms. Wahhaj has met his burden in seeking a subpoena *duces tecum* pursuant to Rule 17(c) because he has cleared all three hurdles: "(1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon,* 418 U.S. at 700.

### *Relevancy and Admissibility of the Donis Report and Videos*

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 401 Fed. R. Evid. Further, evidence is generally admissible unless otherwise provided for. *See* Rule 402 Fed. R. Evid.

To inform and support her contention that she and her co-defendants have standing to contest the search in Amalia, Ms. Wahhaj requests the production of the Donis report and videos. As more fully argued in her Response [Doc. 740] this information is relevant to the argument defendants have standing. It is also relevant to rebut the terrorism charges, and particularly that the defendants' home in Amalia was a terrorist "compound" as the Government repeatedly refers to it. The video from the home in Amalia and any of Donis' observations while present at the home would serve to demonstrate that defendants were not conducting terrorism activities or preparing to launch attacks on federal employees or agents.

### *Specificity of the Request for the Records*

Ms. Wahhaj's request for Donis records is sufficiently specific under the circumstances in that it identifies the precise kinds of material requested. *See, e.g., United States v. McCollom*, 651 F. Supp. 1217, 1224 (N.D. Ill. 1987), *judgment aff'd*, 815 F.2d 1087 (7th Cir. 1987) (holding that a subpoena for "check registers" and "accounts" was sufficiently specific). *See also* Charles A. Wright, Federal Practice and Procedure § 275 at 159 (1982) (stating that, "[i]n describing the documents, the subpoena must refer to specific documents or, at least, to specific kinds of documents."); *United States v. Wittig*, 250 F.R.D. 548, 552 (D. Kan. 2008) (noting that "[a] request will usually be sufficiently specific where it limits documents to a reasonable period of time and states with reasonable precision the subjects to which the documents relate.").

Given that Ms. Wahhaj has valid evidentiary uses for the requested documents and videos, and because her request meets the threshold showing of admissibility, relevancy, and specificity, the Court should order the issuance of subpoenas requiring the production of documents. *See United States v. Gonzales*, 2010 WL 4683880 (D.Colo. Nov. 10, 2010) (Arguello, J.) (unpubl.) (finding that, "while Defendant's Ex Parte Applications for Issuance of Subpoena[s]...were wholly deficient...Defendant has established in subsequent briefing the need for the requested documents."); *United States v. Libby*, 432 F. Supp. 2d 26, 32 (D.D.C. 2006) ("acquiesc[ing] to the movants' willingness to have the Court conduct in camera inspection of documents" where "the number of responsive documents [was] not extensive, and the Court want[ed] to ensure that documents the defendant [was] entitled to receive [were] produced"); *United States v. Poindexter*, 732 F. Supp. 135, 138 (D.D.C. 1990) (court-ordered disclosure of parts of former President Reagan's diaries after *in camera* review).

### ***The Confrontation Clause and the Right to a Jury Trial***

The Confrontation Clause of the Sixth Amendment to the United States Constitution gives criminal defendants the right to confront and cross-examine adverse witnesses. *Maryland v. Craig*, 497 U.S. 836, 846 (1990). The purpose of these rights is to "ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing" at trial. *Id.* at 845. A criminal defendant must be allowed to test the adverse witness' credibility, including possible biases, prejudice, or motives. *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974). The Confrontation Clause also guarantees criminal defendants the right to cross-examine witnesses about their knowledge of material facts in the case. *United States v. Vega Molina*, 407 F.3d 511, 523-24 (1st Cir. 2005). Here, the requested information is necessary to ensure that Ms. Wahhaj is able to effectively

confront the Government's experts, especially the terrorism expert, who has deemed the home in Amalia a terrorist compound and the case agent who investigated defendants for terrorism.

The Donis records are material to Ms. Wahhaj's defense. Ms. Wahhaj has the Sixth Amendment right to seek additional material that may advance her defense and the records at issue are not otherwise reasonably procurable in advance of trial through the exercise of due diligence because this information is in the sole possession of the state police. The production of this evidence, therefore, will aid Ms. Wahhaj in confronting and cross-examining the witnesses against her. To acquire these records by other means would assuredly delay the trial and require significant resources. Further, failure to obtain this evidence would jeopardize Ms. Wahhaj's constitutional rights. Without receiving the records, Ms. Wahhaj will be severely and unfairly hampered in her ability to deny the criminal charges she is facing and properly test the government's theory of the case, which is that Ms. Wahhaj is a terrorist.

Counsel for Ms. Wahhaj certifies application for an order for subpoena *duces tecum* is made in good faith. Ms. Wahhaj has a reasonable belief that the Donis records contains specific, relevant, and admissible evidence necessary for her defense and has been as specific as possible regarding the information sought.

## CONCLUSION

For the reasons provided above, Ms. Wahhaj respectfully requests that this Court order the issuance of a subpoena *duces tecum*, pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, requiring New Mexico State Police ("NMSP") to produce any and all reports, dashcam and lapel cam footage by Officer Donis from his encounter with Tanya Badger and his encounter with Lucas Morton on June 30, 2018 in reference to the United States' recently disclosed discovery.

A proposed subpoena *duces tecum*, will be prepared for the Clerk's signature by counsel if this request is granted. Ms. Wahhaj respectfully requests an Order of the Court granting her motion, instructing the Clerk of the Court to sign and affix the Clerk's seal to the subpoena or a copy provided to the undersigned counsel, and then allowing the undersigned counsel to transmit the subpoena to NMSP.

Respectfully submitted,
THE LAW OFFICE OF RYAN J. VILLA

*/s/ Ryan J. Villa*
Ryan J. Villa
Counsel for Defendant
5501 Eagle Rock Ave NE Suite C2
Albuquerque, NM 87113
(505) 639-5709
(505) 433-5812 (Fax)
Ryan@rjvlawfirm.com

and

*/s/ Justine Fox-Young*
Justine Fox-Young, P.C.
5501 Eagle Rock Ave NE Ste. C2 Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Counsel for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2023, I filed the foregoing electronically through the CM/ECF system, which caused counsel for the United States to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Ryan J. Villa*
RYAN J. VILLA